UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ALAN D. TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19CV4 HEA |
| | ) | |
| NELSON C. TILLMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants Tillman and Davis' Motion for Summary Judgment [Doc. No. 45]. Plaintiff opposes the Motion. For the reasons set forth below, the Motion for Summary Judgment is granted.

### Facts and Background

Defendants have, in accordance with the Court's Local Rules, submitted a Statement of Uncontroverted Material Facts. Plaintiff failed to respond to Defendants' facts in accordance with the Federal Rules of Civil Procedure and the Court's Local Rules. In his Response Memorandum to Defendants' Motion for Summary Judgment, filed as a sur-reply, Plaintiff states that "Plaintiff responded to Defendants' statement of facts and, therefore, all of the facts set forth within this motion are admitted for the purpose to deny the defendants summary judgment and qualified immunity claim." Allowing for a liberal construction of the *pro se*

Plaintiff's pleadings, the Court understands Plaintiff to believe and assert that his two memoranda and attached exhibits are sufficient responses to Defendants' statement of facts, and that the allegations in his memoranda must be deemed admitted. Plaintiff is incorrect.

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides the procedures for supporting factual positions:

(1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Relatedly, Rule 7-401(E) of this Court's Local Rules provides:

Rule 7 - 4.01 Motions and Memoranda.

(E) A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

2

Plaintiff failed to follow the above rules. *Pro se* litigants are not excused from complying with substantive and procedural law, including the Court's Local Rules. *Farnsworth v. City of Kansas City, Mo.*, 863 F.2d 33, 34 (8th Cir. 1988); *Bunch v. Univ. of Arkansas Bd. of Trustees*, 863 F.3d 1062, 1067 (8th Cir. 2017). Defendants' facts are deemed admitted pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7-401(E).

The undisputed facts, as set forth in Defendants' statement of facts, are as follows:

On August 2, 2018, Cape Girardeau Patrol Officer Nelson Tillman ("Tillman") was booking a female suspect in the booking room at the Cape Girardeau Police Department. At the same time, Plaintiff Alan Turner ("Plaintiff") was being booked by another officer. Tillman was not involved in the initial arrest of Plaintiff on August 2, 2018 nor did Tillman have any contact with Plaintiff on that day until Plaintiff arrived in the booking room at the Cape Girardeau Police Department.

At one point during the booking process, Tillman stood at one end of the booking counter with Cape Girardeau Jailer Kindal Al Arnaout ("Al Arnaout"), Probation Officer Kym Moore ("Moore"), and the female suspect, while Plaintiff sat on a bench in front of the booking counter. Plaintiff got up from the bench and approached Tillman, Al Arnaout, Moore, and the female suspect. Tillman ordered

Plaintiff to go back and sit down on the bench. Plaintiff did not comply with Tillman's order. Plaintiff was talking somewhat incoherently and said something to the effect that he was "Jesus." Plaintiff acted aggressively towards Al Arnaout, Moore, and the female suspect, then turned and moved toward Tillman in an aggressive manner. Tillman pointed his taser toward Plaintiff and moved backwards in order to provide Plaintiff with an opportunity to become compliant without the use of force. Tillman did so in an attempt to de-escalate the situation.

Plaintiff continued moving aggressively toward Tillman. Tillman discharged his taser in order to restore discipline, obtain compliance, and protect himself and the other individuals in the booking room. The barbs from the taser struck Plaintiff in the chest and Tillman delivered a single electrical charge to Plaintiff. That was the only time that Tillman used his taser to deliver an electrical charge to Plaintiff. After Tillman delivered the electrical charge, Plaintiff fell to the floor.

Tillman ordered Plaintiff to roll over onto his stomach and put his hands behind his back. Tillman knocked on a window in the booking room, trying to get more police officers and/or jailers to come into the booking room to help secure Plaintiff. Plaintiff began pulling at the taser barbs in his chest. Tillman again ordered Plaintiff to put his hands behind his back. Plaintiff did not comply with that order but rather kept pulling at the taser barbs. Tillman knew that if Plaintiff

4

removed the taser barbs, Tillman would not be able to use them to deliver another electrical charge to Plaintiff if Plaintiff became aggressive again.

Tillman attempted to grab Plaintiff's hands to put them behind Plaintiff's back. Plaintiff resisted those attempts and knocked the taser out of Tillman's hand. Tillman moved away from Plaintiff and took a defensive position in an attempt to de-escalate the situation by providing Plaintiff with an opportunity to become compliant without the use of force. Plaintiff pointed the taser at Tillman and moved aggressively toward him. Tillman grabbed his expandable baton to defend himself in case Plaintiff attacked him again. Tillman ordered Plaintiff several times to get down in a further attempt to de-escalate the situation, but Plaintiff kept moving toward Tillman. Tillman used his expandable baton to defend himself and to stop Plaintiff from attacking him. Plaintiff kept moving toward Tillman.

Tillman then got away from Plaintiff and again ordered Plaintiff to get down. Plaintiff ran down a hallway toward Al Arnaout, Moore, and the female suspect, who were standing at the end of the hallway. Tillman again ordered Plaintiff to get down. Plaintiff started attacking Al Arnaout. Tillman ran toward her and the other women, trying to protect them. Moore sprayed pepper spray toward Plaintiff which coated the floor, causing Tillman to slip on the pepper spray as he approached Plaintiff. When Tillman slipped, Plaintiff moved toward Tillman, repeatedly striking Officer Tillman's head and body with the taser gun. Plaintiff

had also grabbed a flashlight from either Tillman or Al Arnaout's equipment and he repeatedly struck Tillman's head and body with the flashlight.

After Tillman grabbed Plaintiff's legs, he and Al Arnaout were able to get Plaintiff on the floor. Tillman and Al Arnaout wrestled with Plaintiff on the floor to try to secure him. They also yelled for help. Defendant Cape Girardeau Assistant Jail Administrator Shawn Davis ("Davis") ran into the booking room when he heard yells for help. Davis was the first jailer and/or police officer to enter the booking room to assist Tillman and Al Arnaout. Davis saw Tillman and Al Arnaout attempting to secure Plaintiff on the floor and ran to them. Davis then knelt down to help Tillman and Al Arnaout in securing Plaintiff. Davis did so in an attempt to restore discipline, maintain order, obtain compliance, and protect Tillman and Al Arnaout from further injuries. Davis, trying to help secure Plaintiff, grabbed one of Plaintiff's arms and/or hands. Two more police officers came into the room shortly thereafter and Davis assisted them in securing Plaintiff's hands. As more police officers arrived, Tillman and Davis stood up, allowing those officers to finish securing Plaintiff.

Tillman and Davis did not carry Plaintiff into a cell in the booking room and did not personally place any restraints on Plaintiff before he was carried into the cell. Davis never used a taser on Plaintiff. Tillman only used his taser once to deliver a single electrical charge to Plaintiff at the beginning of the incident.

6

Tillman and Davis never used a taser on Plaintiff when they were trying to secure him on the floor of the booking room. Any force Tillman and Davis used on Plaintiff was intended to restore discipline, maintain order, obtain compliance, and protect themselves and the other individuals in the booking room.

As a result of this incident, Tillman received 12 sutures for a laceration on his forehead, 7 sutures for a laceration on the back of his head, 4 sutures for a laceration on his right check, and 2 sutures for a laceration above his right ear, which have left permanent scarring. Tillman also sustained multiple abrasions and bruises from this incident and a CT scan was performed on him due to the severe head trauma he sustained during the incident.

Here, the Court notes that Defendants' version of events is supported by the Affidavits of Tillman and Davis as well as by a DVD containing three video recordings, each capturing the incident that is the subject of this lawsuit from a different angle. The first two video recordings depict the main booking room from two different vantage points: one from the corner opposite the hallway and one from the other side of the booking counter, closer to the hallway. These recordings also contain audio from the booking room. The third video, which has no audio, depicts the hallway just off the booking room. Defendants, in their statement of facts, assert that the videos fairly and accurately depict the incident.

Although Plaintiff did not properly respond to Defendants' statement of facts, he repeatedly asserts that the video recordings were "staged" and "altered." Plaintiff submitted with his opposition to summary judgment a DVD that he claims is "true and factual" and proves that the videos were altered. However, the DVD Plaintiff submitted contains three video recordings that, upon review, are identical to those on the DVD submitted by Defendants. Additionally, Plaintiff claims that Defendants froze portions of the video files to remove incriminating footage. Defendants acknowledge the one video freezes but notes that one of the other cameras recorded the incident while the first camera was frozen. Indeed, the parties are always visible on at least one, unfrozen video recording.

Plaintiff also submitted photos of his injuries and portions of his medical record from Saint Francis Medical Center. He argues that that the videos must be altered because they "do not show Plaintiff being assaulted when it's obvious that Plaintiff sustained numerous of [sic] injuries." According to the medical records he submitted, Plaintiff's injuries were a laceration to his left forehead, a laceration to the back of his head, and abrasions on his foot, hand, and knee. The melee shown in the videos clearly could have brought about each of the injuries shown in the photos and described in the medical records.  Plaintiff's claim that the videos were altered is not considered, as it is both improperly raised and unsupported.

Plaintiff also gives his own account of the incident. As explained in the Discussion section below, Plaintiff's version of events is refuted by the evidence and not considered on this motion.

## Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.,* 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1030 (8th Cir. 2000)

(quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia–Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir.  2000).

## Discussion

Plaintiff claims that Tillman and Davis violated his rights by using unconstitutional excessive force against in him in the booking room. Specifically, Plaintiff claims excessive force was used when Tillman struck him in the upper lip with a metal baton and struck him in the head with a metal flashlight, and when Davis dropped his knee into Plaintiff's upper eye and repeatedly hit him in the face and head as Plaintiff lay on the floor, after Plaintiff had stopped resisting.

10

Plaintiff's excessive force claim is governed by the Fourth Amendment's objective reasonableness standard. *Parrish v. Dingman*, 912 F.3d 464, 467 (8th Cir. 2019) (citing *Hicks v. Norwood*, 640 F.3d 839, 842 (8th Cir. 2011) ("It is settled in this circuit that the Fourth Amendment's 'objective reasonableness' standard for arrestees governs excessive-force claims arising during the booking process.)) To prove a constitutional violation, Plaintiff must show that Defendants' uses of force were not objectively reasonable under the particular circumstances. *Id.* (citing *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009)). Objective reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In determining objective reasonableness, a court may look to "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Zubrod v. Hoch*, 907 F.3d 568, 577 (8th Cir. 2018) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473, (2015)). A court must also consider the "legitimate interests in managing a jail" and give "deference to policies and practices needed to maintain order and institutional security." *Kingsley*, 135 S. Ct. at 2474.

Defendants argue that they are entitled to summary judgment because the uses of force in this case were objectively reasonable, and therefore there is no constitutional violation. Defendants also argue that because there was no constitutional violation, they are immune from suit under the doctrine of qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The entitlement is an *immunity from suit* rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). The Court agrees.

As mentioned above, although Plaintiff did not follow the rules for asserting and disputing facts, Plaintiff did allege in his memorandum opposing summary judgment a version of events which differs from Defendants'. Plaintiff's stated version of events is paraphrased as follows: After Tillman tased Plaintiff, Tillman stood over Plaintiff and yelled "Do you want it again?" (Plaintiff argues that this indicates Tillman's intention was "to cause harm to Plaintiff and not to restore discipline.") Plaintiff then complied with Tillman's demands, but Tillman leapt on him aggressively. When Plaintiff rose to his feet, Tillman struck his upper lip with

a baton, then ran away from Plaintiff. When Plaintiff walked away from Tillman and towards Al Arnaout and Moore, "Tillman used this opportunity to run in from behind [ ] Plaintiff and strike him in the head" with a metal flashlight. Plaintiff then turned around and headed towards Tillman, at which point Al Arnaout knocked him to the floor. Davis then ran in and dropped his knee onto Plaintiff's eyes, causing a deep laceration. Davis also repeatedly hit Plaintiff about the head and face after Plaintiff stopped resisting.

Although the summary judgment standard dictates that the Court view the facts and any reasonable inferences in the light most favorable to the nonmoving party, the Court cannot ignore incontrovertible evidence which clearly contradicts Plaintiff's allegations. *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Here, the videos of the incident clearly contradict Plaintiff's version of events. The videos show that Plaintiff was the only instigator and aggressor, and that Tillman and Davis did not attack him unprovoked. Because the videos clearly contradict the version of the story told by Plaintiff, the Court must view the facts in

the light depicted by the videos. *Wallingford*, 592 F.3d at 892 (citing *Scott*, 550 U.S. at 381).

In the videos, Plaintiff gets up from the bench and walks to Tillman, Al Arnaout, Moore and the female suspect. He shouts at and moves toward them, ignoring Tillman and Al Arnaout's commands to sit down. Plaintiff advances menacingly on Tillman, who tases Plaintiff. Tillman then asks Plaintiff, in an even tone, "Do you want it again?" Plaintiff's contention that Tillman's question is evidence of Tillman's malicious intent to harm Plaintiff and not to maintain order is not reasonable. Rather, Tillman's question and the calm tone used to ask it support Tillman's stated motivation to control the situation and maintain order by warning Plaintiff that force would be used again if Plaintiff did not comply.

Plaintiff refuses to comply with Tillman's orders and gets to his feet, while grabbing and swatting at Tillman and knocking the taser gun out of Tillman's hand. If Tillman did strike Plaintiff in the lip at this time, which is not evident from the videos and not reflected in Plaintiff's medical records, it would have been an objectively reasonable use of force given that Plaintiff refused to comply, actively resisted, caused disorder in the booking room, and struck Tillman.

Plaintiff then picks up the taser gun and brandishes it while chasing Tillman around the booking room counter. While Plaintiff chases him, Tillman hold up his

14

baton defensively. Several times, Plaintiff grabs or swats at Tillman's baton with his free hand while brandishing the taser gun in his other hand.

Tillman eventually gets to the opposite corner of the room from Plaintiff. Plaintiff then moves toward the hallway in which Al Arnaout, Moore, and the female suspect are standing. Plaintiff still brandishes the taser gun in a threatening manner. As Al Arnaout tries to block Plaintiff with a janitor's cart, Plaintiff attacks Al Arnaout, pushing them both behind a shelf and briefly out of the camera's view. Tillman runs into the hallway and appears to slip as he tries to strike Plaintiff. The video does not show Tillman striking Plaintiff with a metal flashlight, and the video supports Defendants' version of events that Tillman slipped. Even if Plaintiff's allegation that Tillman hit him in the head from behind with a flashlight is true, that use of force would be objectively reasonable given the threat of imminent harm to Al Arnaout, Moore and the female suspect, the escalating danger of the situation caused by Plaintiff, and Plaintiff's active violence and refusal to comply.

After Tillman slips, Plaintiff turns around and repeatedly strikes Tillman, who is now crouching or kneeling, on the head and body. Tillman gets his arm around Plaintiff's knees, at which point Al Arnaout runs at Plaintiff and tackles Plaintiff by the upper body while Tillman holds his knees. As Tillman and Al Arnaout struggle with Plaintiff on the floor, Davis enters the room and drops to his

knees to secure Plaintiff, whose arms are still flailing about. Davis stands up holding one of Plaintiff's arms before dropping to his knees again. Plaintiff actively resists, still flailing his head, arms, and torso. Once he is kneeling for the second time, Davis' right arm moves only once in what could be a punching or striking position, at all other times, Davis' upper arms are at his side. Although Davis' hands cannot be seen, his arms are not moving in a way that would indicate he is striking Plaintiff repeatedly in the head and face. It is undisputed that Davis' actions in helping secure Plaintiff were intended to restore discipline, obtain compliance, maintain order, and protect Al Arnaout and Tillman from further injury. Even assuming as true that Davis struck Plaintiff with his knee when kneeling down and then once with his hand, those two uses of force would be reasonable given that Plaintiff was actively resisting, his hands were not secured, and he had already seriously injured two jailers.

Neither Tillman nor Davis used excessive force during the incident. It is plainly evident from the videos that Plaintiff posed a serious threat to Defendants, Al Arnaout, Moore, and the female suspect, that Tillman tried repeatedly to get Plaintiff to comply without force, and that when given the opportunity to comply without force, Plaintiff instead attacked Tillman and Al Arnaout. Plaintiff never stopped actively resisting and was finally subdued by no less than three officers. In light of the circumstances, Defendants' actions were objectively reasonable and do

not amount to a constitutional violation. Because there was no violation of

Plaintiff's constitutional rights, Defendants are also entitled to qualified immunity.

## Conclusion

Plaintiff's claim that the booking room videos were altered is unfounded.

The contents of the videos clearly contradict Plaintiff's excessive force claims.

Plaintiff was disorderly, failed to comply with commands, physically attacked jail

personnel, and resisted submission even after being knocked to the floor. Each use

of force alleged by Plaintiff was objectively reasonable to maintain order and

safety in the booking room. Defendants are entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary

Judgment [Doc. No. 45] is **granted**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Discovery,

[Doc. No. 48] is denied as moot.

A separate Judgment in accordance with this Opinion, Memorandum and

Order is entered this same date.

Dated this 6th  day of May, 2020.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE